**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

TERRENCE Q. WILLIAMS,

                               Petitioner,

      - v -                                            Civ. No. 9:02-CV-1261[1]
                                                                   (GLS/GHL)

JOHN BURGE, Superintendent,

                               Respondent.
_____

**APPEARANCES:**                                     **OF COUNSEL:**

TERRENCE Q. WILLIAMS
Petitioner, *Pro Se*
120-46 193rd Street
St. Albans
Queens, NY 11412

HON. ANDREW M. CUOMO                     PATRICK F. MACRAE, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Attorney for Respondent
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204

**GEORGE H. LOWE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER[2]

       Petitioner Terrence Williams was convicted by a jury in Broome County Court of robbery in

the second degree.[3] Trial Transcript of Terrence Q. Williams, dated Dec. 15 & 16, 1999 ("Trial

---

      [1] *See also* the related case of *Williams v. Burge*, 9:02-CV-1262.

      [2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and N.D.N.Y.L.R. 72.

      [3] The Court notes that Petitioner was released from state custody on March 9, 2007. *See* http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ3/WINQ130. *Habeas* petitioners no longer in custody must demonstrate that they suffer from a "concrete and continuing injury," or a "collateral consequence" of the alleged violation. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citing *Carafas v. LaVallee,* 391 U.S. 234, 237-38 (1968)). The

Tr.") at pp. 411-13. On January 15, 1999, Petitioner was sentenced to a determinate term of incarceration of five (5) years. Sentencing Tr., dated Jan. 15, 1999, at p. 14.[4] Petitioner appealed the judgment of conviction to the Appellate Division, Third Department. In that appeal he claimed, among other issues, that his trial counsel was ineffective. He makes that same claim here. On June 7, 2001, the Appellate Division unanimously affirmed the judgment of conviction. *People v. Williams*, 726 N.Y.S.2d 740 (3d Dept. 2001). Petitioner's application for leave to appeal to the New York Court of Appeals was denied on July 25, 2001. *People v. Williams*, 96 N.Y.2d 807 (2001).

**I. BACKGROUND**

At trial Donald Douglas testified that he had a tattoo business that he conducted out of his apartment, and that on June 9, 1998, he had an appointment to complete someone's tattoo. Trial Tr. at pp. 164-65. He stated that the person arrived at his apartment accompanied by Petitioner, another man, and a woman. *Id.* at pp. 165-66. Douglas testified that while these four persons were in his dining room, he went into his living room and placed approximately one thousand dollars in his pocket from one of the drawers in that room. He did this to be safe since there were multiple people in his home. *Id.* at pp. 168-70 & 186. However, Douglas stated that once he went back to the dining room, he was grabbed and put into a choke hold by one of the men, that Petitioner came after him, and the woman headed for the front door. *Id.* at pp. 170-71. He testified that he fell to the

---

Supreme Court has stated that a challenge to the conviction itself carries the presumption that a collateral consequence exists. *Id.* at 8. Thus, Petitioner fulfills the "in custody" requirement of 28 U.S.C. § 2241 because Petitioner challenges his conviction.

[4] On that same day, January 15, 1999, in a separate case, Petitioner was also sentenced to a consecutive term of imprisonment of four and one-half to nine years on two charges of criminal possession of a controlled substance. Sentencing Tr. at pp. 13-14; *see also* 9:02-CV-1262.

floor and felt someone going through his pockets, but since he was dizzy, he was not sure which man rifled through his pockets. *Id.* at pp. 172-73. Douglas stated the three then ran out of his apartment and he noticed the money was missing. *Id.* at pp. 173-74. Douglas testified that he called the police, and that he subsequently received a telephone call from Petitioner asking him to drop the charges in exchange for the return of the money. *Id.* at p. 175[5].

Katherine Armstrong then testified. *Id.* at p. 203. Armstrong stated that on June 9th, 1998, she went to the apartment of Douglas with Petitioner, who was her boyfriend, his brother, and a man named Dee. *Id.* at p. 205. She testified that Dee had grabbed Douglas and was choking him from behind. *Id.* at p. 207. Armstrong stated that once Douglas fell to the floor, Petitioner went through his pockets. *Id.* at p. 208. She testified that the next day she was stopped by the police, and she told the police that Dee had taken the money because she did not want Petitioner and his brother to get into trouble. *Id.* at p. 209.

Defense counsel then questioned Armstrong regarding certain portions of her grand jury testimony, which was given on two occasions, that conflicted with her trial testimony. *Id.* at pp. 231-46. Counsel noted that Armstrong had told the grand jury that once Dee had grabbed Douglas she ran out the door, whereas during the trial, she stated she did not leave immediately but instead witnessed Petitioner take the money. *Id.* at pp. 233-34. Armstrong further stated in response to counsel's questioning that she had not told the grand jury about Petitioner's involvement during the first portion of her grand jury testimony. *Id.* at p. 234. Armstrong stated that after she testified in the first grand jury session, two detectives spoke to her, she told them what her testimony had been,

---

[5] Officer Nanni testified that when Petitioner was questioned about the incident, he had approximately one thousand dollars in his possession and showed that money to the police, stating it was his money. Trial Tr. at pp. 263-67.

and they told her "that's not what really happened." *Id.* at pp. 235-36. When she spoke to the grand jury for the second session, Armstrong stated that this time she testified Petitioner had been involved in the robbery. *Id.* at p. 236. She also testified that during the second grand jury session, she told the grand jurors that Petitioner, his brother, and Dee had spoken about taking Douglas' money; however, she admitted at trial during defense counsel's cross-examination that on direct examination she did not indicate this conversation took place. *Id.* at pp. 237-38. Armstrong further admitted to counsel that her statements to the police and to the grand jury in both sessions were not completely truthful. *Id.* at p. 240. Defense counsel then questioned Armstrong about a letter she had written to Petitioner a week prior to trial wherein she stated that the prosecution was in essence forcing her to testify against him and if she did not stick to her story given to the grand jury, she would be charged with perjury or contempt if she did not testify. *Id.* at pp. 242-46.

## II.     THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Petitioner's ineffective assistance of counsel claim is based upon his assertion that "[d]efense counsel never moved to dismiss the indictment or to investigate the egregious prosecutorial misconduct, which infected the entire grand jury proceeding." (Pet. at ¶ 12(a), Attach. at p. 1.) This assertion is based upon Ms. Armstrong's inconsistent and contradictory testimony before the grand jury, and the alleged conduct of the police and prosecutor that caused Ms. Armstrong to provide such inconsistent and contradictory testimony.

## III.    DISCUSSION

### A.     Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner on a claim:

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001); *see also Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003). The AEDPA also requires that in any such proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Boyette v. Lefevre*, 246 F.3d at 88 (quoting § 2254(e)(1)).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> Under AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: (1) was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled?  (2) If so, was the state court's decision "contrary to" that established Supreme Court precedent?  (3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.2d 100, 108-09 (2d Cir. 2000)).  *See generally Lynn v. Bliden*, 443 F.3d 238 (2d Cir. 2006).

### B.     Errors in Grand Jury Proceeding Are Not Cognizable

In this habeas application Petitioner is faced with a fatal threshold issue: alleged errors in a state grand jury proceeding are not cognizable on federal habeas review. *Lopez v. Riley*, 865 F.2d 30 (2d Cir. 1989); *Miller v. Hunt*, No. 9:06-CV-177, 2008 WL 170411, at *5 (N.D.N.Y. Jan. 15, 2008).  The Petition should be dismissed on this ground alone.

### C. The Merits of Petitioner's Ineffective Assistance Claim

#### 1. Clearly Established Supreme Court Precedent

In *Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006), the Second Circuit succinctly addressed the applicable law for an ineffective assistance claim:

> An ineffective assistance claim asserted in a habeas condition is analyzed under the "unreasonable application" clause of AEDPA because it is "past question that the rule set forth in *Strickland* qualifies as clearly established federal law, as determined by the Supreme Court of the United States." *Williams*, 529 U.S. at 391 (internal quotation marks omitted); *Sellan*, 261 F.3d 110, 124 (2d Cir. 2003) (further citations omitted).

*Srickland* established a two prong test to determine whether counsel has been ineffective. *Strickland v. Washington*, 446 U.S. 668, 688 (1994). As set forth in the test, a defendant must prove that, 1) counsel's representation fell below an objective standard of reasonableness under prevailing norms, and; 2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694; *see Wiggins v. Smith*, 539 U.S. 510 (2003); *Aparico*, 269 F.3d at 95; *see also Clark v. Stinson*, 214 F.3d 315, 321 (2d Cir. 2000).

A criminal defendant has a high burden to establish the deficiency of his counsel. According to the Second Circuit:

> The court must ... determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* at 690, 104 U.S. S.Ct. 2052. In gauging the deficiency, the court must be "highly deferential, must "consider all the circumstances," must make "every effort ... to eliminate the distorting effects of hindsight," and must operate with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...

*Lindstadt v. Keane*, 239 F.3d 191, 198-99 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 688-89,

690) (alterations original to *Lindstadt*).

As for prejudice resulting from counsel's inadequate performance:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. To merit habeas relief, "the defendant must show that the deficient performance prejudiced the defense." *Id*. at 687, 104 S.Ct. 2052. The level of prejudice the defendant need demonstrate lies between prejudice that "had some conceivable effect" and prejudice that "more likely than not altered the outcome in the case." *Id.* at 693, 104 S.Ct. 2052. Thus, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. The Court defined "reasonable probability" as one that "undermine[s] confidence in the outcome." *Id*.

*Lindstadt*, 239 F.3d at 204.

### 2.      AEDPA Deference

The Appellate Division explicitly discussed and rejected Petitioner's claim: "nor do we find merit in his claim that he received ineffective assistance of counsel." *People v. Williams*, 284 A.D.2d 564, 568 (3d Dept. 2001). "The alleged shortcomings of his counsel were strategic determinations which do not form the basis for an ineffective assistance of counsel claim." *Id.* Since the Appellate Division adjudicated the claim on the merits, this Court must give deference to that determination. *Hines v. Miller*, 318 F.3d 157, 160-61 (2d Cir. 2003).

### 3.      Contrary To, or Unreasonable Application of, Supreme Court Precedent

Little discussion is necessary here. This Court agrees fully with the Appellate Division's finding that "[d]efendant has failed to show that any actions of the prosecutor or his agents may have potentially prejudiced the Grand Jury requiring dismissal of the indictment." *People v. Williams*, 284 A.D.2d at 566-67. In addition, defense counsel's decision not to seek dismissal of the

indictment (assuming *arguendo* he seriously considered such a motion) could have been, as found by the Appellate Division, a strategic determination, *i.e.*, he might have been comfortable with the opportunity to cross-examine Ms. Armstrong based upon her inconsistent and contradictory statements. In short, the Third Department's decision is not contrary to, or an unreasonable application of, *Strickland* and its progeny. Accordingly, this Court recommends that the Petition be dismissed for this alternative reason.

**WHEREFORE**, based on the foregoing, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED** and **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), & 6(e).

Dated: February 14, 2008
       Syracuse, New York

*[signature]*
George H. Lowe
United States Magistrate Judge